# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION


**LOIS FERGUSON,**

    **Plaintiff,**

-v-                                        Case No.: 2:16-cv-176
                                                    JUDGE GEORGE C. SMITH
                                                      Magistrate Judge Jolson

**OFFICER MICHAEL SHIPPITKA,** *et al.*,

    **Defendants.**


## OPINION AND ORDER

This matter is before the Court on Defendants Officer Michael Shippitka and Police Chief Dennis Murphy's Motion for Summary Judgment (Doc. 23). Plaintiff has filed her response and this Motion is now ripe for review. For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment.

### I. FACTS

Plaintiff Lois Ferguson is a citizen of the State of Ohio and is employed as a community health worker with Celebrate One. She is 58 years old. (Doc. 22, Pl. Dep. at 13). During the timeframe relevant to this case, Plaintiff was employed as a packer at The Limited. (*Id*. at 17).

During the relevant time frame, Defendant Dennis Murphy was the Police Chief for the City of Gahanna. (Doc. 1, Compl. ¶ 5). Defendant Michael Shippitka was a police officer with the City of Gahanna. (*Id*.).

This case arises out of an incident that occurred in the early morning hours on February 25, 2014. Ferguson was driving home after working the second shift (5 p.m. to 2 a.m.) at The

Limited despite having a restriction on her Ohio driver's license to only drive during the daytime hours. (*See* Doc. 22, Pl. Dep. at 20 – 21). Plaintiff does not dispute that she should not have been driving outside of her license restriction. (*Id*. at 24). She further admits that both her front and rear license plates was not properly mounted on her car. (*Id*. at p 25–26).

Gahanna Police Officer Gary Lawrence was on routine patrol, traveling northbound on I-270 at approximately 2:30 a.m. when he observed Plaintiff's vehicle. Specifically, he observed that the rear license plate was not property displayed and therefore he initiated a traffic stop. (Doc. 23–3, Lawrence Aff. ¶¶ 3–5). Officer Lawrence checked Plaintiff's identification through the Law Enforcement Automated Data System ("LEADS") and learned that her driver's license was restricted to only daytime driving. When Officer Lawrence questioned Plaintiff about the restriction and the improper display of the license plates, she did not dispute either issue. (*Id*., Lawrence Statement of Facts). At this time, Officer Michael Shippitka arrived at the scene. (*Id*.). Officer Lawrence then told Plaintiff that she was being issued a traffic citation, and her vehicle would be towed. (*Id*.).[1] Plaintiff then became very agitated. (*Id*.).

Officer Shippitka described that he was standing at the driver's side door and Officer Lawrence was on the passenger's side. (Doc. 21, Shippitka Dep. at 19). Ferguson told Officer Shippitka she was not going to allow her car to be towed, locked the doors, and refused to get out of the vehicle. (*Id*.; see also Doc. 23-3, Lawrence Statement of Facts). Officer Lawrence told Ferguson she was not allowed to continue driving the vehicle because it was nighttime, and

---

[1] Officer Shippitka stated that the standard practice of the Gahanna Police is "if the registered owner of the vehicle is driving a vehicle and is impaired or under suspension – and driving with a restriction is under the same statute as driving with a suspended license – our standard practice is to impound the car, not to let the driver take the vehicle, not to let somebody come up and take possession of the vehicle." (Doc. 21, Shippitka Dep. at 35–36).

her vehicle had to be towed and impounded. (*Id.*). Plaintiff called her brother to explain the situation and asked if someone could drive out and pick up her and her car. (Doc. 22, Pl. Dep. at 30). Plaintiff maintains that she had arranged for her brother and his wife to drive thirty minutes across town and pick up her car, rather than having it towed. (*Id.* at 29 – 31). However, thirty minutes was too long to wait along side of a major interstate at 3 o'clock in the morning. (*Id.* at 29–31, 34). Officer Shippitka asked Plaintiff to get out of her vehicle, but she refused. (Doc. 21, Shippitka Dep. at 21). He then ordered her out, but she refused. (Doc. 22, Pl. Dep. at 34). Plaintiff did not want her car towed and impounded because "that is extra money." (*Id.* at 37).

Officer Shippitka explained to Plaintiff that she could be charged with Obstructing Official Business if she continued to remain in her vehicle. (Doc. 21, Shippitka Dep. at 22). When the tow truck arrived and backed in front of Plaintiff's vehicle, she finally got out of her vehicle. (*Id.* at 23–24). Officer Shippitka then explained to Plaintiff that he needed her car keys and she responded, "I'm not giving you my F'ing car keys." (*Id.* at 24). Plaintiff admits to being frustrated. (Doc. 22, Pl. Dep. at 37). She said that the City of Gahanna was "thirsty" and they needed her money. (*Id.* at 40).

Officer Shippitka again asked Plaintiff for her keys. (Doc. 21, Shippitka Dep. at 26–27). Shippitka describes that Plaintiff was becoming increasingly aggravated and again said, "I am not giving you my F'ing keys." (*Id.*). Plaintiff admits that she said, "I'm not giving you all my keys. You're taking my car, I will not be locked out of my house. I'll take the car key off." (Doc. 22, Pl. Dep. at 40). At that time, according to Plaintiff, Officer Shippitka "grabs her hands and starts squeezing." (*Id.*). Officer Shippitka describes that he told Plaintiff, "I need your keys. Once again you are obstructing official business. We need the key to finish up the impound

3

process and the inventory of your vehicle." (Doc. 21, Shippitka Dep. at 27). Shippitka described that the whole incident with his hand on Plaintiff lasted 15 seconds. "At some point Ms. Ferguson said, "You're hurting me. I will give you my F'ing keys." (*Id*.). And Officer Shippitka remembers Officer Lawrence say "Okay, you're hurting her." (*Id*.). Officer Shippitka immediately let go of Plaintiff's hands and he put his hands in his coat. (*Id*. at 29–30). Plaintiff then removed her car key and the officers began the vehicle inventory process. (*Id*.). Officer Lawrence ultimately drove Plaintiff to the Speedway in Gahanna where she could wait for a ride home. (Doc. 23-3). Officer Lawrence issued Plaintiff a citation for Driving Outside Her License Restriction (in violation of Gahanna Code Section 335.07(B)), and Improper Display (in violation of Gahanna Code Section 335.09(A)). The morning following the incident, Plaintiff went to the BMV and received a new driver's license without the day time driving restriction. (Doc. 22, Pl. Dep. at 22).

On February 25, 2016, Plaintiff initiated this case against Defendants Shippitka and Murphy alleging claims of violation of her Fourth, Eighth and Fourteenth Amendment rights under the Constitution of the United States and 42 U.S.C. § 1983 claims for failure to supervise, control and discipline, and for punitive damages.

## II.  SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587. The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53. Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"

5

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. DISCUSSION

Defendants have moved for summary judgment on all of Plaintiff's claims against them. In response to Defendants' Motion, Plaintiff has abandoned her Eighth Amendment claim and the Section 1983 claim against Defendant Murphy for failure to supervise, control, or discipline, stating that there are no genuine issues of material facts as to these claims. Defendants are therefore entitled to summary judgment on these claims. The only remaining claim is Plaintiff's Fourth Amendment excessive force claim. The Court will address the parties' arguments with respect to this claim.

A.      **Applicable Fourth Amendment Law**

A claim that a law enforcement official used excessive force in the course of an arrest, investigatory stop, or other seizure of a person is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). The Fourth Amendment requires that an officer's use of force be objectively reasonable, and courts must balance the consequences to the individual against the government's interests in effecting the seizure. *See Graham*, 490 U.S. at 396. This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Id.* at 396. "[R]easonableness must be evaluated from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.* Courts evaluating the reasonableness of force used "should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001) (quoting *Graham*, 490 U.S. at 396). However, "[t]hese factors are not an exhaustive list, and the ultimate inquiry is whether the seizure was reasonable under the 'totality of the circumstances.'" *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006).

B.      **Analysis of Plaintiff's Excessive Force Claim**

Plaintiff argues "there was no legitimate law enforcement objective in Defendant Shippitka insisting that Ferguson relinquish all of her keys. The only key needed was the key to

her vehicle. These traffic violations were not serious crimes. Ferguson was not violent. She did not pose any threat to the safety of Officer Lawrence or Defendant Shippitka. She was not resisting arrest or attempting to evade arrest by flight. Ferguson never refused to provide the key to the car." (Doc. 30, Pl.'s Resp. at 5–6).

Defendants argue that Plaintiff fails to set forth sufficient evidence to establish a genuine issue of material fact on this claim. Defendants assert that "Ferguson's claims are undermined by the fact that she refused to comply with Officer Shippitka's clear and repeated instructions." (Doc. 23, Defs.' MSJ at 10). Further, Defendants highlight many contradictory statements made by Plaintiff her Memorandum Contra and her deposition testimony.

First, Plaintiff asserts in her Memorandum Contra that she "was seated in her car not being resistant in any way." (Doc. 30, Pl.'s Memo. Contra at 1). However, during her deposition, she testified that when ordered out of her car, "I was like no, my brother said he was coming to get my car, you all don't need to tow my car . . . I had my doors locked all the time." (Doc. 22, Pl. Depo. at 34).

Next, Plaintiff argues that she "never refused to provide the key to her car." (Doc. 30, Pl.'s Memo. Contra at 2). But in her deposition, she acknowledges that Officer Shippitka asked her for her keys more than once. (Doc. 22, Pl. Depo. at 41). Plaintiff describes that she was holding her keys in both hands. Plaintiff then said, "I'm not giving you all my keys. You're taking my car, I will not be locked out of my house. I'll take the car key off." (Doc. 22, Pl. Dep. at 40). At that time, according to Plaintiff, Officer Shippitka "grabs her hands and starts squeezing." (*Id*.). Officer Shippitka describes that he told Plaintiff, "I need your keys. Once again you are obstructing official business. We need the key to finish up the impound process

8

and the inventory of your vehicle." (Doc. 21, Shippitka Dep. at 27). Shippitka described that the whole incident with his hand on Plaintiff lasted 15 seconds. "At some point Ms. Ferguson said, "You're hurting me. I will give you my F'ing keys." (*Id*.). And Officer Shippitka remembers Officer Lawrence say "Okay, you're hurting her." (*Id*.).

As soon as Plaintiff complained that Officer Shippitka was hurting her, he released her hands. There is no testimony that the incident lasted more than 15 seconds or caused more than a momentary discomfort. Plaintiff does state that she suffered a broken finger as a result of the incident. The medical records show she suffered an "avulvsive injury of the distal second phalanx," an injury to the fingertip bone of her second finger.

In order for a claim like this to reach a jury, the plaintiff must allege more than some physical injury. *See Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001). There must also be some showing that officers ignored plaintiff's complaints. *See e.g., Burchette v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002) (rejecting excessive-force claim as a matter of law where officers left defendant tightly handcuffed for three hours because defendant did not initially complain about the handcuffs, and when he did complain, the officers responded promptly); *see also Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005) (rejecting excessive-force claim for a tackle as a matter of law where plaintiff alleged little by way of physical injuries from handcuffing, and did not allege that her physical complaints to the officers went unheeded).

Based on the totality of these circumstances, a reasonable officer in this situation, dealing with an uncooperative person during a traffic stop on the interstate, in the middle of the night, would have wanted to complete the impound process to have the car towed as soon as possible. Although Plaintiff was not a violent person, she was being uncooperative and the officer had a

9

legitimate interest in obtaining her car keys. Therefore, the minimal use of force to obtain Plaintiff's keys was justified under the circumstances. The fact that Officer Shippitka used some force and the fact that Plaintiff was injured does not mean that summary judgment is inappropriate. The situation only lasted seconds and there is no evidence that Plaintiff's complaint that Officer Shippitka was hurting her was ignored. Accordingly, Defendants are entitled to summary judgment on Plaintiff's excessive force claim.

## IV. DISPOSITION

For all of the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

The Clerk shall remove Document 23 from the Court's pending motions list and enter final judgment and close this case.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**